Catherine MACK, Representative Payee
for Paulette Ware, Appellant,

v.

Margaret HECKLER, Secretary of
Health and Human Services,
Appellee.

No. 85–5248.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 8, 1986.

Decided March 21, 1986.

William R. Voltz, Washington, D.C., for appellant.

Ronald S. Robins, pro hac vice, Sp. Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MIKVA and EDWARDS, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Catherine Mack, the representative payee for Paulette Ware, appeals the Social Security Administration's (SSA) reduction of Ware's supplemental disability benefits. The applicable statute and regulations authorize reduction of these benefits when the beneficiary is either sharing a household with another person who gives in-kind support and maintenance to the beneficiary, or is otherwise receiving in-kind support or maintenance. The regulations detail the steps of proof necessary to satisfy these two independently valid tests for reducing payments. Because we are unable to determine from the record whether the SSA's Administrative Law Judge (ALJ) followed the steps necessary under either test to support his conclusion, we reverse the district court's decision to uphold the reduction in Ware's benefits. We remand the case to the district court, and order that it be remanded to the ALJ to clarify the basis of his decision.

## I. THE DISTINCT THEORIES ALLOWING REDUCTION OF DISABILITY BENEFITS

An overview of the regulatory scheme is necessary in order to assess Mack and Ware's situation properly. Under Title XVI of the Social Security Act, every aged, blind, or disabled individual is eligible to receive Supplemental Security Income calculated on the basis of income and resources. 42 U.S.C. § 1381a (1982). If the beneficiary is receiving unearned income, including "support and maintenance furnished in cash or in kind," benefits are reduced through the use of various formulae. If the beneficiary is living in the household of another who provides the beneficiary with both food and shelter, benefits are reduced by one-third. 20 C.F.R. 416.1130(c) & .1131-.1133 (1984). If the beneficiary does not meet this test, either because the regulations deem her to live in her own household or because she is not receiving both food and shelter from another person, then the "presumed value" rule requires reduction of benefits only to the extent of support and maintenance actually received. 20 C.F.R. § 416.1130(c) & .1140-.1145.

Before approving any reduction in benefits, therefore, the reviewing tribunal must examine the agency's conclusions in two separate inquiries. First, the agency must determine the support and maintenance, if any, that the beneficiary is receiving. Second, the agency must apply the appropriate formulae and perform the proper calculations to determine how much this support and maintenance reduces the monthly benefit payment.

## II. FACTS

Paulette Ware, an adult, receives supplemental social security benefits paid to mentally disabled persons under 42 U.S.C. § 1382(a)(1) (1982). Ware is not employed. Her mother, Catherine Mack, is Ware's representative payee for the receipt of Ware's benefits. Mack has been unemployed since December 31, 1981, and admits that the money she receives from her daughter is her only income. The two women live in the same building at 802 Quintana Place, N.W. in Washington D.C., and share a kitchen and bathroom; Ware occupies a bedroom and a den by herself. Their

household budgets and the sources and uses of their funds for food, shelter, and other household expenses are at the core of this case and are discussed more fully below.

In September 1982, the SSA notified Mack, in her capacity as Ware's representative payee, that it intended to reduce Ware's supplemental income benefits by one-third of the amount she was then receiving. The agency based this proposed reduction on its determination that Ware was receiving support and maintenance in Mack's household. Mack went to the SSA office in Washington D.C. to dispute this reduction. According to Mack, the claims representative told her that if Mack issued rental receipts to her daughter each month in exchange for her daughter's rent payments, the agency would no longer deem the shelter provided to Ware to be in-kind support. Mack provided these receipts. The SSA office also asked Mack to provide the following information to rebut the agency's basis for the proposed reduction in benefits: (1) a lease agreement between Mack and Ware showing a landlord/tenant relationship; (2) Mack's tax returns reporting rent payments from Ware as income to Mack; and (3) a diagram of Ware's living quarters demonstrating that her living quarters were totally separate from Mack's. The notice stated that if Mack provided no evidence to support her claim that Ware supported herself in her own household, SSA's one-third reduction would cut Ware's benefits to $204.54 per month. Mack did not provide the requested information.

In March 1983, Mack had a Quality Assurance interview in her home with an SSA representative. Ware was not present at the interview. Mack declined to discuss the value, if any, of the food or shelter she provided to Ware. After the interview, SSA notified Mack that the agency intended to reduce Ware's benefits by one-third, based on its determination that Ware was receiving support and maintenance in Mack's household. Mack moved for reconsideration, which the agency denied. In June 1983, the agency issued a Special De-

termination that there was no landlord-tenant relationship between the two women, and that Ware received in-kind benefits from Mack. The determination noted as evidence that Mack provided support to Ware during Ware's first twenty-five years, and that Mack failed to have Ware present to corroborate Mack's claim that the two women live separately. The agency appears to have ignored totally the contrary implications arising from the undisputed evidence. According to this evidence, Mack had no income to provide food or clothing for Ware, or for herself, other than Ware's benefits. This oxymoronic reasoning seems to have pervaded the entire proceedings.

In October 1983, an Administrative Law Judge held a hearing *de novo*. The ALJ found in February 1984 that Ware had received support from Mack and lived in her household since September 1982; he concluded that Ware's benefits should be reduced by one-third. The SSA Appeals Counsel affirmed the ALJ in June 1984.

When Mack appealed the SSA decision to reduce her benefits, the district court affirmed the ALJ. The court found substantial evidence to support the SSA's decision that Ware received in-kind income from Mack in the form of shelter at below-market value. The available evidence, however, does not warrant such a finding, and we hold that the district court's affirmance was clearly erroneous. The regulations require that the ALJ base his decision to reduce benefits upon one or more alternate bases in the regulation, each with its own requirements of proof. But which of these bases the SSA chose to support its findings is unclear. The district court therefore could not have properly determined that the agency's conclusion was supported by substantial evidence.

III. APPLICATION OF THE REGULATIONS TO WARE'S SITUATION

A. For the definition of support and maintenance, we turn to the SSA's regulations. In-kind support and maintenance is

any food, shelter, or clothing which is given to the beneficiary, calculated at current market value unless otherwise specified. 20 C.F.R. § 416.1130 (1984). The record reveals no substantial evidence that Ware was receiving in-kind support and maintenance, as defined, from Mack or any other person. Mack testified strenuously that she did not give Ware any food, and had no money with which to buy food for Ware, other than Ware's benefits. She also maintained that Ware purchased her own "health" food with the $52 per month in food stamps that she received, and that the two women stored, prepared, and ate their food separately from each other. There is also nothing in the record to suggest that Mack or any other person gave Ware clothing; again, Mack was receiving no independent income with which she could pay for Ware's clothing. The inquiry here must focus, as it did before the ALJ and the district court, on shelter.

■ The ALJ and district court opinions are confused and confusing on the question of whether Mack provided Ware with shelter. Shelter, according to the regulations, includes "room, rent, mortgage payments, real property taxes, heating fuel, gas, electricity, water, sewerage, and garbage collection services." § 416.1130(b). The opinions concluded that the amount of rent Mack charged Ware was not the amount "charged under a business arrangement," *id.*, and that therefore Ware was receiving in-kind support and maintenance. The ALJ and the district court compared Mack's two estimates of the fair market monthly rental and utilities cost of Ware's quarters ($200 or $270) against the amount that Ware allegedly "contributed" toward rent and utilities ($170). They reached the seemingly inescapable conclusion that Ware was not paying full market value for her rent, and so was receiving shelter from Mack.

This conclusion is plainly erroneous. The record evidence supports only one conclusion: Ware through her benefit check was providing *all* of the rent money, which Mack then paid to the owner of the building. In light of the undisputed facts on the record, findings that Mack provided in-kind shelter to Ware are clearly erroneous and indeed baffling. Mack may hold the pursestrings, but Ware and only Ware fills the purse. Mack is unemployed and has no income of her own. As far as the record shows, the only money Mack receives each month is Ware's benefits check. Mack pays the rent for the house in which she and Ware live, but the nearly inescapable conclusion is that she pays this rent with Ware's money, not her own. Thus it is logically impossible to conclude that Mack is providing Ware with shelter. We reject the bizarre assumption that Mack's mere handling of Ware's money somehow transforms it into Mack's own money; it follows that Mack's payment of the monthly rent *with Ware's money* cannot possibly be convoluted into a determination that Mack provided *Ware* with in-kind shelter. Further development of the record may disclose some hidden source of income for the two women. As it stands, however, the record compels the conclusion that Mack did not provide Ware with shelter or any other support and maintenance.

■ B. Since a showing of some support or maintenance is a necessary condition for reducing the beneficiary's monthly benefit, the existing record strongly suggests that Ware's monthly benefit was incorrectly reduced and must be restored. But in any event, receipt of support and maintenance, even if established, is not a sufficient condition for reducing benefits. For the present purpose only—to guide the ALJ in proceedings on remand—we make the heroic assumption that further proceedings reveal that Mack was in fact providing some kind of support and maintenance to Ware. That fact, even if established, would not necessarily reduce Ware's benefits. The regulations clearly require a further finding that the beneficiary lives in the household of another.

■ The evidence available strongly suggests, under the definitions found in the regulations, that Ware lives in her own household. A person lives in her own household if she, *inter alia,* has an owner-

ship or life estate interest in the home, is liable to the landlord for payment of any part of the rent, or pays at least a pro rata share of household and operating expenses. § 416.1132(c)(1)–(5). The pro rata share exception is the one we focus on here. It dictates that a beneficiary who is sharing a household with another person is still deemed to live in her own household, *for the purpose of avoiding benefit reductions*, if she contributes pro rata to the household's combined total expenses. The SSA's Special Determination found that the two women were pooling expenses "incurred in the ordinary operation of a household," Special Determination at 3, but neither the ALJ nor the district court proceeded to examine whether Ware was paying a pro rata share of these expenses.

■ Applying the pro rata share exception to the evidence, we believe that Ware should be deemed to live in her own household. The combined household expenses of Mack and Ware are the total monthly expenditures for food, rent, mortgage, property taxes, heating fuel, gas, electricity, water, sewerage, and garbage collection services, averaged over the past twelve months. § 416.1133(c). A pro rata share in a household of two people is half of the total household expenses. § 416.1133(b). Applying these yardsticks to the record strongly suggests that Ware pays at least her pro rata share of the household expenses, if not substantially more. We are hindered in reaching this determination by Mack's uncooperativeness; she told the SSA investigator that the various household expenses were her business and hers alone, and that SSA had no right to force her to divulge this information. Mack's uncooperativeness cannot provide the basis for reducing Ware's allowance. Since the record shows that Ware pays all the expenses, *a fortiori* she pays a pro rata share. Thus the case must be remanded for a determination of whether Ware is living in her own household. The ALJ can encourage Mack's cooperation by explaining that her testimony and evidence about household expenses is likely to help Ware's cause rather than to defeat it.

■ If Ware is living in her own household, or alternatively is not receiving both food and shelter in Mack's household, the SSA is required to continue its inquiry by applying the presumed value rule to the beneficiary. If the beneficiary operates her own household, or alternatively is living in the household of another person who is not providing both food and shelter, the SSA's regulations presume that the level of support and maintenance the beneficiary receives is one-third of her benefit level, thus allowing a corresponding reduction of her benefits. § 416.1140. However, when the presumed value test is used, the regulations require that the beneficiary be afforded opportunity to rebut the presumption and to show that the current market value of any food, shelter, or clothing she receives, minus any payments she makes for them, is less than their presumed value of one-third of her benefits. § 416.-1140(a)(2)(i). The maximum amount that benefits may be reduced is the presumed value. § 416.1140(b)(1).

■ If the presumed value test does not apply, the one-third reduction rule may apply. There is a categorical one-third reduction in benefits if the beneficiary is living in the household of another person who is providing support and maintenance to the beneficiary. 42 U.S.C. § 1382a(a)(2)(A)(i), implemented by 20 C.F.R. § 416.1131(a) & (b). The regulations define the support and maintenance as the receipt of "both food and shelter" from someone who is living in the same household as the beneficiary. 20 C.F.R. § 416.1131(a). We are extremely doubtful that the requirements of this one-third reduction rule are satisfied here; we have found no evidence that Mack provides Ware with even one cent of support and maintenance. *See* pp. 421–423 *supra.*

### Conclusion

With meager financial and legal resources of their own, the representative payee and her beneficiary have been locked in a maze of densely packed and highly

technical formulae and definitions that governs calculation of disability benefits. Regrettably, the ALJ and the district court, in failing to assess Mack and Ware's claims in light of the SSA's entire scheme for calculation of disability benefits, have done little to clarify why a mother and her mentally disabled daughter find themselves in this maze or how they may escape. Despite strong indications that Ware received no support and maintenance from Mack, and in any event operated her own household because she contributed more than pro rata to the combined expenses of herself and Mack, the ALJ concluded that Ware lived in Mack's household and received both support and maintenance. This finding is plainly wrong and cannot be affirmed. To the extent that the reduction in Ware's benefit payment rests on another basis, we are unable to identify from the record which basis it might be or which evidence supports that basis.

We therefore remand the case to the district court for further remand to the ALJ. The ALJ must indicate the legal basis for the agency's reduction in Ware's social security benefits. If the SSA reduced her benefits by one-third based on a finding that she lives in the household of another and receives both food and shelter from that person, the agency must locate evidence of these in-kind payments, and must then allow Mack the opportunity to escape from operation of this provision altogether by showing that Ware is paying a pro-rata share of household expenses. If, however, the SSA is relying on the presumed value rule, the agency must permit Ware to rebut the presumption that she is receiving in-kind support and maintenance worth at least one-third of her disability benefit. Since Ware appears to receive little or nothing in payments from Mack and to be contributing 100% of the household expenses incurred by Mack and Ware, a record that would warrant any reduction in Ware's benefits is hard to imagine. The ALJ must restore Ware's benefits if no valid basis exists for having reduced them.

The opinion of the district court is *Reversed and remanded.*